IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FRED WILLIAM WALKER, JR.,
    Petitioner,

vs.                                            Case No.: 3:15cv72/MCR/EMT

JULIE L. JONES,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1). Respondent filed an answer and relevant portions of the state court record (ECF No. 10). The court provided Petitioner an opportunity to file a reply (*see* ECF No. 11), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 10).[1] Petitioner was charged in the Circuit Court in and for Escambia

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 10). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

County, Florida, Case No. 2012-CF-4621, with one count of second degree murder with a firearm (Ex. B). On March 1, 2013, Petitioner signed a written plea agreement, pursuant to which he agreed to enter a "straight up" plea of nolo contendere as charged (Ex. C). Petitioner agreed that the factual basis for the plea was set forth in the probable cause affidavit of the arrest report (*id.*). The trial court accepted the plea (Ex. D). On April 26, 2013, the court adjudicated Petitioner guilty and sentenced him to a term of life imprisonment with a 25-year mandatory minimum, and with pre-sentence jail credit of 229 days (Ex. E). Petitioner did not appeal the judgment.

On February 26, 2014, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F). In an order rendered March 12, 2014, the state circuit court dismissed the motion for failure to comply with the requirements of Rule 3.850(c) and (n) (Ex. G). The dismissal was without prejudice to Petitioner's filing an amended motion within 60 days (*id.*). Petitioner filed an amended motion on April 3, 2014 (Ex. H). The state circuit court summarily denied it on July 21, 2014 (Ex. I). Petitioner appealed the decision to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-4621 (Exs. J, K). The First DCA affirmed the decision per curiam without written opinion on January 6, 2015, with the mandate issuing February 3, 2015 (Ex. M). Walker v. State, 156 So. 3d 1085 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on February 25, 2015 (ECF No. 1).

II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

"In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Richter). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing

evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

> Ground One: "Petitioner's plea was involuntarily entered due to counsel's misleading advise [sic] that once Petitioner pleaded nolo to second-degree murder he would receive a sentence of 25 years in prison, where at sentencing hearing it was revealed that there was no prearranged agreement for a 25 year sentence and the court sentenced Petitioner to life. But for counsel's advise [sic] Petitioner would not have pled."

Petitioner alleges that in February of 2013, his trial counsel conveyed a plea offer that if he entered a plea of nolo contendere to second degree murder, he would receive a prison sentence of 25 years (ECF No. 1 at 5–7).³ Petitioner alleges that at no time did counsel advise him that he was facing a possible life sentence (*id.*). Petitioner alleges he entered his plea based upon counsel's advice that he would be sentenced to not more than 25 years (*id.*). Petitioner alleges the trial court accepted his plea, but then sentenced him to life in prison (*id.*). He alleges that if counsel had advised him that he was facing the possibility of a life sentence, he would not have entered a plea, and instead would have insisted upon a jury trial (*id.*).

---

³ The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Respondent concedes that Petitioner presented this claim to the state courts in his amended Rule 3.850 motion, and that the state circuit court adjudicated the claim on the merits (*see* ECF No. 10 at 16–20). Respondent also concedes that Petitioner presented the issue to the First DCA in his appeal of the lower court's decision, and that the appellate court adjudicated the claim on the merits (*id.*). Respondent states that it thus "appears" that Petitioner satisfied the exhaustion requirement of § 2254(b)(1)(A), but Respondent qualifies that the State does not concede or waive the exhaustion defense (*id.* at 18 n.4). Respondent contends the state court's adjudication of Petitioner's claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 20–25).

    1.  Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. The two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during the plea process. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 691. The Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

    2.    Federal Review of State Court Decision

Petitioner raised this claim in his amended Rule 3.850 motion (Ex. H). The state circuit court adjudicated the claim as follows:

> Defendant claims counsel was ineffective by inducing him to plea by misleading Defendant as to the nature of the charge and the consequences of his plea. He alleges his public defender conveyed an offer from the State to plea nolo contendere to second degree murder, by which he would receive a 25 year sentence. Instead, Defendant was sentenced to life in prison.
>
> At a hearing on March 1, 2013, Defendant affirmed he understood the State's offer was for a plea straight up, with sentencing left to the Court's discretion. (Exhibit A, p. 5.) The plea agreement indicated a maximum life sentence. (Exhibit B.) Defendant stated he did not want to take the case to trial but wanted to enter a plea. (Exhibit A, pp. 5–6.) Defendant also understood he was pleading to a charge of second degree murder with discharge of a firearm, and he had read the plea agreement. (Exhibit A, p. 7.) Defendant affirmed no one had made any promises to get him to enter the plea. (Exhibit A, p. 8.) Defendant signed the plea agreement, and the Court

> went over the terms of it with him, including the fact the maximum sentence was life in prison with a mandatory 25 years minimum. (Exhibit A, p. 10–13.)
>
> Even if counsel had advised Defendant he would receive a sentence of 25 years, such advice was cured by the Court's plea colloquy. *See Alfred v. State*, 998 So. 2d 1197, 1200 (Fla. 4th DCA 2009). Likewise, the record shows Defendant was advised of the nature of the offense to which he was entering his plea.

(Ex. I). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. M).

The record includes a transcript of the plea hearing, with the following relevant portions of the colloquy between the court and Petitioner after Petitioner had been sworn:

> MR. MOLCHAN [the prosecutor]: . . . [T]he State has submitted a straight—plea straight-up for a PSI to be ordered in this regard and will leave sentencing to the Court's discretion. Now, there is a firearm and there are mandatory issues with that.
>
> But that's where we're at at this point in time.
>
> THE COURT: So you're not offering and wouldn't even consider anything less than this plea straight up?
>
> MR. MOLCHAN: That's exactly right, Your Honor.
>
> THE COURT: Okay.
>
> Do you understand that, Mr. Walker?
>
> THE DEFENDANT: Yes.
>
> THE COURT: So, I mean, your attorney can't be blamed for the fact that the State's taken that position. I mean, you know, that's the State's position. Trust me, if the State was willing to deal, they would let your attorney know.
>
> THE DEFENDANT: All right. I understand.
> . . . .
> THE COURT: All right. Now, we've got a trial scheduled on your case for this coming Monday. Do you need to talk with your attorney? What do you wish to do about that?
>
> THE DEFENDANT: I don't want to take it to trial.

Case No.: 3:15cv72/MCR/EMT

  THE COURT:  Does that mean you want to plea?

  THE DEFENDANT:  Yes, sir.

  THE COURT:  Okay.  You understand that the State's offering you a plea straight up?  All right.  So you'll be pleaing [sic] to—

  MR. MOLCHAN:  Second-degree murder with a firearm with discharge and causing great bodily harm.  You'll be facing a—there is a plea agreement that was sent to the defense.  I'm not sure if Mr. Walker's had a chance to review that.

  THE COURT:  Have you read the plea agreement?

  MR. ATKINSON:  Yes, sir.

  THE COURT:  All right.  Are you willing to go with that?

  THE DEFENDANT:  Yes, sir.

  THE COURT: All right. Would you bring it, Mr. Atkinson [defense counsel]?

  All right, I already put him under oath, didn't I?  Yeah.

  All right.  Do you understand that you're going to be pleaing [sic] to second-degree murder with the discharge of a firearm.  Is that correct?

  THE DEFENDANT:  Yes, sir.

. . . .

  THE COURT:  All right.  The only thing that's been promised to you is that there'll be a presentence report and the sentencing will be at the discretion of the Court.

  THE DEFENDANT:  Yes, sir.

  THE COURT: All right. Did anybody force you in any way to enter this plea?

  THE DEFENDANT:  No, sir.

  THE COURT: Did anyone make any other promises to you to get you to enter this plea?

  THE DEFENDANT:  No, sir.

. . . .

Case No.:  3:15cv72/MCR/EMT

> THE COURT: All right. Well, you signed the plea agreement, right? You, obviously, had a chance to read it because it's all curled up. Do you have any questions about what's in here?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Did you have a chance to read the whole plea agreement?
>
> THE DEFENDANT: Not all of it, no.
>
> THE COURT: Okay. Well, do you want to sit down and read all of it and make sure you understand what you're pleaing [sic] to and what the terms are? Let me just go over this with you.
>
> All right. You're pleaing [sic] straight up. You're going to be adjudicated. The sentence is going to be at the discretion of the Court. The plea is to second-degree murder with a firearm and discharge of a firearm with a maximum of life prison [sic] and $15,000 fine and a mandatory twenty-five years minimum.
> . . . .
> You waive or give up the right to request a modification of your sentence as long as the sentence is within the sentencing guidelines.
>
> You understand the maximum period of imprisonment and fines.
> . . . .
> Do you understand that the State is seeking enhanced penalty because the discharge of a firearm and that you can receive a prison sentence of life with a minimum mandatory of twenty-five years. . . . . So those are the terms that are in the plea agreement. Do you understand all that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. I know I went through it pretty quickly. Do you have any questions about what I've just covered?
>
> THE DEFENDANT: No.

(Ex. D at 5–13).

The written plea agreement, which Petitioner signed, clearly stated that Petitioner was entering a plea "straight-up," that the maximum sentence he could receive was life in prison, and that he faced a mandatory sentence of 25 years (Ex. C). The agreement included no other terms with regard to Petitioner's sentence (*id.*).

The state court reasonably applied Strickland in rejecting Petitioner's claim. In Blackledge v. Allison, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977), the Supreme Court stated:

> [T]he representations of the defendant, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

431 U.S. at 73–74; *see also* United States v. McCord, 618 F.2d 389, 393 (5th Cir. 1980) ("[A] defendant ordinarily will not be permitted to refute testimony given under oath at a plea or sentencing hearing.").

Petitioner's claim that his plea was induced by counsel's promise that he would be sentenced to 25 years in prison, and that he (Petitioner) was unaware that he could receive a life sentence, is conclusively refuted by Petitioner's assertions in the written plea agreement and during his plea colloquy, that his plea was not induced by any promises; that he understood there was no agreement, no understanding, no promise, and no assurance concerning the sentence the court would impose; and that he understood he could be sentenced to life in prison, with a minimum mandatory of 25 years. Indeed, the prosecutor clearly stated in Petitioner's presence at the beginning of the plea hearing, that the State did not offer or agree to any particular sentence

The state court's rejection of Petitioner's claim was not contrary to Strickland, was not based on an unreasonable application of Strickland, and was not based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas relief.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542

(2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of November 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**